MORLAN *v.* VILLAGE OF MARCELLUS.[1]

MUNICIPAL CORPORATIONS—CLAIMS—PRESENTATION TO COUNCIL—
VERIFICATION—WAIVER.

Failure of a claimant to verify a claim presented to the common council of a village (section 2754, 1 Comp. Laws) is waived by the council appointing an investigating committee and receiving and acting upon its report without raising the question of verification.

Error to Cass; Des Voignes, J. Submitted October 25, 1907. (Docket No. 139.) Decided December 10, 1907.

Case by M. Jay Morlan against the village of Marcellus for personal and other injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Otis Huff* and *Smith & Lyle*, for appellant.

*Walter C. Jones* and *Marshall L. Howell*, for appellee.

BLAIR, J. This action was brought to recover damages for injuries received on the night of July 21, 1906, alleged to have occurred through the negligence of defendant in leaving certain obstructions in one of the public streets of defendant village. The principal question in the case arises upon the ruling of the court that there was no evidence tending to show a waiver of the provisions of section 2754, 1 Comp. Laws, requiring a verification of plaintiff's claim. In consequence of this ruling, the court directed a verdict for defendant and plaintiff brings the record to this court for review. Plaintiff filed with the common council three several notices or claims, at the dates therein indicated, as follows:

[1] Rehearing denied January 6, 1908.

"To the President and Common Council of the Village of Marcellus, Michigan.

"*Gentlemen:* You will please take notice that I intend to hold the said village of Marcellus liable for personal injuries, and for damage and loss of property, sustained Saturday evening, July 21st, 1906, in one of the public streets in said village, to wit: in Main street near the New Baptist Church building. Said injuries and damage being sustained on the account of a large amount of timber, rubbish, boards, brick and other obstructions being placed and left in the said street by the said village, or left there through their knowledge, and with their consent, making the said street unsafe for travel and dangerous, all of which the said village had knowledge of, and there being no lights or danger signals at the said place, contrary to the village ordinance.

"Dated, Marcellus, Mich., July 24th, 1906.

"JAY MORLAN,

"By OTIS HUFF, his Attorney."

"STATE OF MICHIGAN, County of Cass,

"Village of Marcellus.

"To the President and Common Council of the said Village of Marcellus, Michigan.

"*Gentlemen:* You will please take notice that on Saturday evening, July 21st, 1906, while driving in, on and over one of the public streets in the said village of Marcellus, to wit: on Main street near the new Baptist Church building, without any fault or negligence on my part, but through the negligence and fault of the said village, I sustained injury, loss of property and damage to personal property belonging to me.

"At this time I cannot exactly estimate and itemize said loss, but in a general way the said damage and loss consist of serious damage to my driving team. Said team consisted of two valuable driving horses, one of said horses being seriously injured and may die as a result of said injury. Said loss and damage also consisted of destruction to the harnesses on said horses, loss and damage to my buggy, injury to myself and loss and damage of other personal property than herein enumerated.

"You will please take notice that said injury received and said damage and destruction to my property was sustained by my team and buggy coming in contact, without any fault on my part, with certain encroachments and obstructions in the traveled portion of said Main

150 MICH.—26.

street, to wit: a large amount of timber, boards, plank, rubbish, stone, bricks, logs, poles and other obstructions . and encroachments in the said street, placed there by and with the consent of said village, and through the knowledge and with the consent of the president and common council and street commissioner and other officers of the said village, making the said street unsafe and dangerous to the public, all of which the said village had knowledge of.

"Said street was particularly dangerous on the night in question due to the fact, to the best of my knowledge and belief, that there were no danger signals or lights guarding the said dangerous place in the said street.

"For the said injury, loss and destruction of property sustained by me through the fault and negligence of the said village, you will please take notice that in accordance with my notice of July 24th, 1906, I claim damage against the said village, to wit: to the sum of one thousand dollars.

"If the said claim is not settled on or before August 18th, 1906, I shall bring suit in the circuit court for the county of Cass to recover the said amount.

"Dated, August 14th, 1906.

"M. J. MORLAN,

"OTIS HUFF, Attorney for Plaintiff."

"STATE OF MICHIGAN, County of Cass,
     "Village of Marcellus.

"Village of Marcellus

| To M. J. Morlan | Dr. |
|---|---|
| To injury and damage to horse | $100 00 |
| To injury and damage to other horse | 25 00 |
| To destruction of harnesses | 35 00 |
| To livery expense to catch team, chasing team, expense of staying in town, etc. | 10 00 |
| To destruction of whip | 1 00 |
| To loss of time and loss of use of team | 25 00 |
| To damage to buggy | 15 00 |
| To veterinary expense, treating horse, etc. | 10 00 |
| To other damage not specifically stated | 10 00 |
| To personal injury and other damages | 769 00 |
| To R. D. Bailey taking views of obstructions in street which caused said damage and injury, no charges | |
| "Total | $1,000 00 |

'You will please take notice that I claim said damage in conformity with my notice which I served August 14th, 1906, in which I then claimed as I do now that said damage and loss of property resulted through the negligence of the said village. You will please take further notice that I reserve the right to add to said amount, if the damage to the said team should prove greater than herein claimed.

"Dated, August 28, 1906.

"M. J. MORLAN,
"By OTIS HUFF, his Attorney."

The record of the meeting of the common council held on the 24th of July, 1906, showed the following:

"Jay Morlan, through his attorney, Otis Huff, served notice upon the village council for injuries, damage and loss of property sustained by him in the village Saturday evening, July 21st, 1906, on Main street near the new Baptist Church. The president appointed trustees Long and Bailey as a committee to meet Mr. Morlan and confer with him in regard to the matter.

"C. E. DAVIS, President.
"WILL M. BEADLE, Clerk."

At a meeting of the common council held September 4th, 1906, its records show that the following took place:

"Meeting, Sept. 4th, 1906.

"Moved by Hoover, supported by Speigelmeyer, that the report of the special committee on the Morlan case be accepted and committee discharged. Motion carried.

"Moved by Hoover, supported by Speigelmeyer, that the president and clerk be authorized to settle with Mr. Morlan according to the committee's report, if possible. Motion carried.

"Report of committee on Morlan case.

"Your committee to whom was referred the claims of Jay Morlan for damages against the village would respectfully report: We drove to his farm where we saw the horse that was injured. It was a good driving horse, worth before the accident about $175. It had sustained a wound in the breast, at that time nearly healed. Mr. Morlan claimed that it had been injured in the hip, but the horse was active on its feet and showed little or no signs of serious injury. Mr. Morlan stated to us that the other horse sustained no injury whatever and we did not

see it. The harness worn by one of the horses was in Mr. Morlan's barn and was badly torn to pieces. We saw the other half of the harness and the buggy at the livery barn in Marcellus.

"That part of the harness at the livery barn was not greatly injured and could have been repaired without much expense. The harness did not appear to have had good care before the accident, and was far from being a new harness. The buggy was an old affair, worn out, and of little value before the accident, and $3 would, we believe, fully cover the damage to the buggy. It appeared to us that $50 would cover the entire loss sustained by Mr. Morlan.

"We have consulted three good judges of the value of such property who have seen the rig since the accident. One placed the damage, including loss of the use of the horse, veterinary service, livery rig, etc., at $40 to $65, said it might possibly run to $75 at the outside period. Reports made to the board by two gentlemen from Volinia township, who investigated the damage yesterday, were to the effect that when they first saw the horse, he was running in the pasture and no injury was then noticeable to the hip, and the wound in the breast had entirely healed, but that in standing still, he favored one hip and there was an injury to it, that might or might not be serious, only actual hard work would prove as to whether the horse was permanently injured or not. The gentlemen reported that in view of the possibility of the horse being permanently injured, the expense of veterinary services and the other actual damages, they would place Mr. Morlan's total damages at $100.

"Your committee further finds that Mr. Morlan had repeatedly driven by the building material in the street and had passed it by daylight the same evening and knew fully the condition of the street, which was not dangerous to a man driving with ordinary care; that he remained at the Power House with two women until after the street lights had been extinguished, after 11 o'clock, after which the three started to drive west from the livery stable on Main street and, leaving the beaten track, ran over the sills at the south side of the road.

"Under no circumstances can Mr. Morlan legally recover from the village more than actual damages he sustained; knowing that the building material was there, the law makes it obligatory for any one to take extra pre-

cautions on that account; not doing so, makes it contributory negligence on his part, and he, therefore, could not recover any damages whatever.   We believe the accident was entirely due to such negligence on the part of Mr. Morlan, and while we do not believe the village liable for damages, we would recommend, without prejudice of the case of the village if it goes into the courts, that we tender the claimant the sum of $100, for which he is to give the village receipt in full for all claims, and shall not now nor hereafter bring any suit, or make any further claim for damages on this account.   This amount, $100, is the highest estimate of the actual damages sustained as made by any one of the five who have estimated the same at the solicitation of the village; and in proffering Mr. Morlan this sum in settlement, we do so to buy peace and avoid the expense of suits at law, even though we believe the same unjust and that the village is neither morally nor legally responsible for any damages whatever in the case.

                   (Signed)       "CHARLES C. LONG,
                                   "ARTHUR E. BAILEY.

"Dr. Davis, as village president, tendered Mr. Morlan, through his attorney, the sum of $100, which was declined.

                          "C. E. DAVIS, President.
                          "WILL M. BEADLE, Clerk."

The trial judge ruled that the facts of this case distinguished it from the case of *Hunter* v. *Village of Durand*, 137 Mich. 53.   In this ruling we think the circuit judge was in error and that the case falls within the principle of and is ruled by that case.   It seems clear from the record that, except for his erroneous view as to the question of waiver, the judge would have permitted amendments to obviate the objection of variance and would have permitted the case to go to the jury.   We, therefore, do not consider the questions raised as to variance, since they are not likely to occur upon another trial.

Judgment reversed, and a new trial granted.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.